## FIDELITY & DEPOSIT COMPANY *v.* PEOPLE'S BANKING COMPANY.

[No. 62, October Term, 1933.]

*Decided January 17th, 1934.*

The cause was argued, together with that next preceding, before BOND, C. J., ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

694

*Washington Bowie, Jr.,* and *Walter L. Clark,* with whom were *William D. Macmillan* and *J. Stuart Galloway* on the brief, for the appellant.

*Daniel W. Doub* and *W. Clinton McSherry,* with whom was *Elias B. Hartle* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

The appeal in this case is from an order dismissing the appellant's petition, filed in the same case as that in which the decree was entered from which the appeals in Nos. 61 and 63 were taken. See 165 Md. 657, 170 A. 544. The purpose of the petition was to have the court rescind and modify so much of that decree as awarded four mortgages, held by the Central Trust Company of Maryland, to the People's Banking Company of Smithsburg, Maryland, and award such mortgages to the Fidelity & Deposit Company of Maryland.

The circumstances under which the Central Trust Company acquired possession of those mortgages, and the facts relating to the appellant's contention in respect to them, have been fully stated in the opinion in Nos. 61 and 63, and need not be repeated further than is necessary to indicate the basis of the conclusion in this case.

The contention of appellant is that those four mortgages formed part of collateral which the Trust Company had promised to transfer to it to protect it from loss as surety on certain depositary bonds which it had executed on behalf of the Trust Company to protect state deposits, but that, while the Trust Company never had transferred those mortgages to appellant, it nevertheless was entitled to them under an agreement with the Trust Company, dated August 10th, 1931, referred to in the opinion in Nos. 61 and 63. But the contention that the agreement of August 10th, 1931, was in itself a contract to deposit collateral security is fallacious. That agreement is not that. It is an agreement fixing the relative rights and interests of the parties in the collateral pledged; it does not bind them to pledge it. On its face it

refers to collateral which the "Principal" "has deposited," not to collateral which it was to deposit. It does refer to a schedule of mortgages included in the collateral, said to have been, but which in fact had not then been, deposited, which embraced the four mortgages. The agreement does not itself contain any promise to deposit collateral, but such a promise must be found, if at all, in the evidence taken in connection with the proceedings which culminated in the final decree in this case. If that evidence were considered, it would disclose an executory promise to deposit the four mortgages as collateral security, and it would show too that none of the mortgages which the agreement of August 10th, 1931, scheduled, were legally assigned to the Fidelity & Deposit Company until after August 19th, 1931, and that the Central Trust Company never did assign or deliver the four mortgages to appellant. It would show, too, that the bonding companies accepted the executory promise of the Trust Company to deposit collateral described in certain lists or schedules, including the four mortgages, as sufficient consideration for its agreement to continue on the depositary bonds as surety; that that promise was later executed by depositing the listed collateral except the four mortgages, but that they never were either assigned or deposited; so that the Fidelity & Deposit Company never acquired any title, legal or equitable, to them, whatever its rights to sue at law on the breach of the contract to deliver them may be. If this court were at liberty to entertain this appeal, that conclusion would lead to an affirmance, but it has no such power.

The title to those four mortgages was directly in issue in the case in which the petition was filed, and was finally adjudicated by the final decree passed therein on March 11th, 1933. The plaintiffs in the bill in that case prayed that the receiver be required to restore to the Banking Company "all the property and assets" of the People's Banking Company "in his hands." The appellant answered that bill, but asked for no affirmative relief in respect to those mortgages, in its answer, by way of petition or otherwise, prior to the

final decree, nor until that decree has become enrolled, nor indeed until the People's Banking Company had appealed from a part of that decree.

Assuming, without deciding, that the trial court had jurisdiction to consider at all appellant's petition filed after an appeal had been taken from so much of the final decree as construed the identical contract upon which appellant relied for relief in his petition, if it was dissatisfied with the decree, appellant's remedy was to appeal directly from it, and not from an order refusing to rescind and modify it. Dealing with that precise question, Chief Justice Alvey (formerly Chief Judge of this court), speaking for the Court of Appeals of the District of Columbia, said in *Babbington v. Washington Brewery Co.,* 13 App. D. C. 527, 27 Wash. Law Rep. 24: "But, all other considerations aside, the appeal has not been properly brought into this court. The appeal, as we have seen, was specifically taken from the order of the court of the 18th of March, 1898, overruling the motion to rescind or vacate the final order of distribution of the 15th of March, 1898. This order of the 15th of March was the effective and final decree, and the order overruling the motion to rescind it is strictly analogous to the refusal to grant a new trial in an action at law, or to the refusal to grant a rehearing in a case in equity; in neither of which cases will an appeal lie. It was certainly competent to the court to rescind the order at any time during the term in which it was made, but it does not appear that there was anything before the court to call into exercise its discretionary power to revoke or to rescind the order. The appeal could have been taken, and should have been taken, if desired, from the order of the 15th of March. · The cases referred to by the counsel for the appellants 'show that the appeal must be taken from the final order or decree, and not from an order overruling a motion to vacate the decree. *Brockett v. Brockett,* 2 How. 238, 240 [11 L. Ed. 251]; *Memphis v. Brown,* 94 U. S. 715 [24 L. Ed. 244]. If the appeal had been ·taken and brought up from the order of distribution of the 15th of March, 1898, instead of the order

of the 18th of March, overruling the motion to rescind, we should, for the reasons we have stated, have affirmed that order of distribution. But the appeal, coming as it does, we have to dismiss it." 3 *C. J., Appeal and Error,* sec. 355, note 12. The rule thus announced is not only consistent with common sense and sound reason, but essential to the orderly administration of the business of the courts. Certainly it would be a most anomalous situation to have this court considering on appeal from a final decree the precise question decided by that decree at the same time that the trial court was considering it in the same case on a motion to vacate and modify the decree. If appellant conceived that it had been injured by any supposed error in the final decree, its exclusive and sufficient remedy was to appeal from it. It follows that the appeal in this case must be dismissed.

*Appeal dismissed, with costs.*